Jeffrey L. Hartman, Esq., #1607
**HARTMAN & HARTMAN**
510 West Plumb Lane, Suite B
Reno, Nevada 89509
T. (775) 324-2800
F. (775) 324-1818
notices@bankruptcyreno.com
Attorney for Plaintiff,
W. Donald Gieseke, Trustee

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

IN RE:

| | |
|---|---|
| WEALTH STRATEGIES INCOME FUND, LLC | CASE NO. BK-N-16-50042-gwz |
| | CHAPTER 7 |
| Substantively Consolidated with: | |
| | (Lead Case) |
| Wealth Strategies Investment Fund, LLC | |
| Wealth Strategies Real Estate Fund, LLC | |
| Wealth Strategies Equity Fund, LLC | Case No. 16-50047-gwz |
| Wealth Strategies by Bayliss & McAninch, Inc. | Case No. 16-50048-gwz |
| Wealth Strategies Opportunity Fund, LLC | Case No. 16-50059-gwz |
| Wealth Strategies Development, Inc. | Case No. 16-50060-gwz |
| Connemara (Dayton), LLC | Case No. 16-50081-gwz |
| Connemara Park, LLC | Case No. 16-50082-gwz |
| Eagle Ridge at Genoa, LLC | |
| Granite Ridge at Markleeville, LLC | |
| The Ranch at Gardnerville, LLC | |
| The Ranch at Gardnerville 1, LLC | |
| Wealth Strategies Real Estate Income Fund, LLC | |
| Connemara Development, LLC | ADV. NO. _____ |
| Connemara Equity Partners, LLC | |
| Nevada Gardnerville Ranch, LLC | |
| Nevada Gardnerville Ranch Manager, LLC | |
| Wealth Strategies Opportunity Fund II, LLC | |
| JGNM14, LLC | |
| HGNM14, LLC | |
| FCS14NM, LLC | |
| North Ranch Associates 14, LLC | |
| Natrona Investments, LLC | |
| Natrona Management, LLC | |
| Mustang Ridge, LLC | |
| 1830 Parkway, LLC | **COMPLAINT TO AVOID** |
| Petram Capital, LLC | **FRAUDULENT TRANSFERS** |
| Quadruple B, LLC | |
| Plantation Group, LLC | |
| Fortune 50 Investors, LLC | |
| CC Angel Investments, LLC, | |
| | |
| Debtors. | |
| _____/ | |

1   W. DONALD GIESEKE, Chapter 7 Trustee,

2           Plaintiff,

3   vs.

4   MURRAY ALSTOTT, TRUSTEE OF THE
    MURRAY ALSTOTT LIVING TRUST,
5   SANDRA ALTHAUS, TRUSTEE OF THE
    SANDRA J. ALTHAUS FAMILY TRUST,
6   JUAN ARRAIZ, TRUSTEE OF THE ARRAIZ
    FAMILY TRUST, DOROTHY ARRAIZ,
7   TRUSTEE OF THE ARRAIZ FAMILY TRUST,
    RON BOWMAN, LINDA BOWMAN,
8   PATRICIA BURGER, TRUSTEE OF THE
    BURGER FAMILY TRUST, WILLIAM
9   BURGER, TRUSTEE OF THE BURGER
    FAMILY TRUST, DAWN GRABOWSKI,
10  TRUSTEE OF THE DAVID A. CABLE LIVING
    TRUST, CAPITAL MEDICAL
11  DEVELOPMENT, LLC, VERONIQUE
    CHACON AKA VERONIQUE CHACON-
12  GUYOT, JEANNETTE KELLEY, CO-
    TRUSTEE OF THE EUGENE CHANEY
13  IRREVOCABLE INSURANCE TRUST, JOE
    COELHO, RACHEL COELHO, JAMES
14  CUNNINGHAM, TRUSTEE OF THE
    CUNNINGHAM FAMILY TRUST,
15  CATHERINE CUNNINGHAM, TRUSTEE OF
    THE CUNNINGHAM FAMILY TRUST,
16  ARTHUR DUVALL, TRUSTEE OF THE
    DUVALL LIVING TRUST, SALLY DUVALL,
17  TRUSTEE OF THE DUVALL LIVING TRUST,
    SALLY DUVALL, TRUSTEE OF THE SALLY
18  B. DUVALL IRREVOCABLE LIVING TRUST,
    RUSSELL FIDDYMENT, LEON GARICOITZ,
19  TRUSTEE OF THE GARICOITZ FAMILY
    TRUST, KELLIE BALLARD BENEFICIARY
20  IRA, KIMBERLY DALE, TRUSTEE OF THE
    EDWARD W. GIAMBALVO 1988 TRUST,
21  KIMBERLY DALE BENEFICIARY IRA, KYLE
    GIAMBALVO BENEFICIARY IRA,
22  INVESTOR SERVICES CORP. CUSTODIAN
    FBO EDWARD GIAMBALVO IRA, HEATHER
23  GIMPLE, JOHN GIMPLE, JENNIFER
    GORMLY, ARTHUR HARFORD, TRUSTEE
24  OF THE HARFORD FAMILY TRUST, GLORIA
    HARFORD, TRUSTEE OF THE HARFORD
25  FAMILY TRUST, DIANE HICKS, JOHN
    HICKS, JUDY HOLLOWAY, DAVID HUNT
26  DAVID HUNT IRA, DAVID HUNT,
    CUSTODIAN, TD AMERITRADE FBO DAVID
27  HUNT IRA, RON PETERSON, TRUSTEE OF
    THE INMAN PETERSON FAMILY TRUST,
28  LANETTE INMAN, TRUSTEE OF THE

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

INMAN PETERSON FAMILY TRUST,
DEBBIE  KELLEY, TRUSTEE OF THE
DEBBIE KELLEY TRUST, PAUL KNIGHT,
TRUSTEE OF THE A & P KNIGHT 2007
TRUST, AGNES KNIGHT, TRUSTEE OF THE
A & P KNIGHT 2007 TRUST, MARK LEBAR
IRA, MARK LEBAR, CUSTODIAN, MICHAEL
J. LEBAR, BENEFICIARY OF THE W. JUNE
LEBAR INHERITED IRA AND THE W. JUNE
LEBAR SURVIVORS TRUST A, K. JENELLE
RICKSEN, BENEFICIARY OF THE W. JUNE
LEBAR SURVIVORS TRUST A AND WALLIS
J. LEBAR INHERITED IRA, POLYCOMP
CUSTODIAN FBO KATHERINE J. RICKSEN,
BENEFICIARY OF WALLIS J. LEBAR
INHERITED TRUST, MARK LIPKOWITZ,
TRUSTEE OF THE LIPKOWITZ LIVING
TRUST, URSULA LIPKOWITZ, TRUSTEE OF
THE LIPKOWITZ LIVING TRUST
NORMAN METCALF CUSTODIAN FOR
NORMAN METCALF IRA, TD AMERITRADE
CUSTODIAN FBO NORMAN METCALF IRA,
NORMAN METCALF, TRUSTEE OF THE
NORMAN AND BETTY METCALF FAMILY
TRUST, BETTY METCALF, TRUSTEE OF
THE NORMAN AND BETTY METCALF
FAMILY TRUST, ANGELO PECORILLA,
THOMAS PUGA, TRUSTEE FOR THE
PACIFICA ELECTRICAL CONTRACTORS,
INC. DEFINED BENEFIT PLAN, PATRICIA
PUMPHREY, PATRICIA PUMPHREY IRA,
PATRICIA PUMPHREY CUSTODIAN FOR
PATRICIA PUMPHREY IRA, TD
AMERITRADE CUSTODIAN FBO PATRICIA
PUMPHREY IRA, PATRICIA PUMPHREY,
TRUSTEE OF THE PUMPHREY FAMILY
TRUST, RAMSDEN PROPERTIES, LTD.,
JANICE PERRY, JOHN PERRY, JOHN PERRY
CUSTODIAN JOHN PERRY IRA, TD
AMERITRADE CUSTODIAN FBO JOHN
PERRY IRA, RESOLUTE SECURITY GROUP,
INC., ROLAND SALA, CAROL SALA,
ROLAND SALA, TRUSTEE OF THE ROLAND
AND CAROL SALA FAMILY TRUST, CAROL
SALA, TRUSTEE OF THE ROLAND AND
CAROL SALA FAMILY TRUST, ROLAND
SALA CUSTODIAN ROLAND SALA IRA,
CAROL SALA CUSTODIAN CAROL SALA
IRA, CAROL SALA ROLLOVER IRA, TD
AMERITRADE CUSTODIAN FBO CAROL
SALA ROLLOVER IRA, MARY SLAVICH,
DAVID SMALL, TRUSTEE OF THE SMALL
FAMILY TRUST, RUTH SMALL, TRUSTEE
OF THE SMALL FAMILY TRUST, FREDRICK
SMITH, TRUSTEE OF THE FREDRICK TED

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

1  AND CAROL DIANE SMITH FAMILY TRUST,
   CAROL SMITH, TRUSTEE OF THE
2  FREDRICK TED AND CAROL DIANE SMITH
   FAMILY TRUST, CAROL SMITH
3  CUSTODIAN CAROL SMITH ROLLOVER
   IRA, TD AMERITRADE FBO CAROL SMITH
4  ROLLOVER IRA, CRYSTAL SOUSA,
   LAUREN METCALF STEVENS, WAYNE VAN
5  SICKLE, TRUSTEE OF THE VAN SICKLE
   GRANDCHILDRENS TRUST, WAYNE VAN
6  SICKLE, JOAN VAN SICKLE, DEBRA
   WILLIAMS CUSTODIAN DEBRA WILLIAMS
7  SEP IRA, TD AMERITRADE CUSTODIAN
   FBO DEBRA WILLIAMS SEP IRA, DEBRA
8  WILLIAMS, TRUSTEE OF THE DEBRA
   WILLIAMS FAMILY TRUST, RICHARD
9  YAMAMOTO, TRUSTEE OF THE
   YAMAMOTO FAMILY TRUST,
10
        Defendants.
11  _____/

12

13        W. Donald Gieseke, chapter 7 trustee for the above-captioned,

14  substantively consolidated cases ("Plaintiff"), as and for his complaint against

15  the named Defendants, alleges as follows:

16

17                         **PARTIES**

18        1.      Plaintiff is the duly appointed and acting chapter 7 trustee for the

19  above-captioned, substantively consolidated estates ("Wealth Strategies

20  Entities").  The petition date for the Wealth Strategies Entities is deemed to be

21  January 14, 2016 ("Petition Date").

22        2.      Plaintiff is informed and believes and thereon alleges that at all

23  times relevant herein Defendant MURRAY ALSTOTT, TRUSTEE OF THE

24  MURRAY ALSTOTT LIVING TRUST, was a resident of the State of Nevada.

25        3.      Plaintiff is informed and believes and thereon alleges that at all

26  times relevant herein Defendant SANDRA ALTHAUS, TRUSTEE OF THE

27  SANDRA J. ALTHAUS FAMILY TRUST, was a resident of the State of

28  Nevada.

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

4

4.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JUAN ARRAIZ, TRUSTEE OF THE ARRAIZ FAMILY TRUST, was a resident of the State of Nevada.

5.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant DOROTHY ARRAIZ, TRUSTEE OF THE ARRAIZ FAMILY TRUST, was a resident of the State of Nevada.

6.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant RON BOWMAN was a resident of the State of Nevada.

7.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant LINDA BOWMAN was a resident of the State of Nevada.

8.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant PATRICIA BURGER, TRUSTEE OF THE BURGER FAMILY TRUST, was a resident of the State of Nevada.

9.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant WILLIAM BURGER, TRUSTEE OF THE BURGER FAMILY TRUST, was a resident of the State of Nevada.

10.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant DAWN GRABOWSKI, TRUSTEE OF THE DAVID A. CABLE LIVING TRUST, was a resident of the State of Massachusetts.

11.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant CAPITAL MEDICAL DEVELOPMENT, LLC, was an entity formed and operating under the laws of the State of Nevada.

///

///

12.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant VERONIQUE CHACON AKA VERONIQUE CHACON-GUYOT was a resident of the State of Nevada.

13.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JEANNETTE KELLEY, CO-TRUSTEE OF THE EUGENE CHANEY IRREVOCABLE INSURANCE TRUST, was a resident of the State of Nevada.

14.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JOE COELHO was a resident of the State of Nevada.

15.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant RACHEL COELHO was a resident of the State of Nevada.

16.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JAMES CUNNINGHAM, TRUSTEE OF THE CUNNINGHAM FAMILY TRUST, was a resident of the State of Nevada.

17.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant CATHERINE CUNNINGHAM, TRUSTEE OF THE CUNNINGHAM FAMILY TRUST, was a resident of the State of Nevada.

18.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant ARTHUR DUVALL, TRUSTEE OF THE DUVALL LIVING TRUST, was a resident of the State of Nevada.

19.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant SALLY DUVALL, TRUSTEE OF THE DUVALL LIVING TRUST, was a resident of the State of Nevada.

///

20.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant SALLY DUVALL, TRUSTEE OF THE SALLY B. DUVALL IRREVOCABLE LIVING TRUST, was a resident of the State of Nevada.

21.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant RUSSELL FIDDYMENT was a resident of the State of Nevada.

22.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant LEON GARICOITZ, TRUSTEE OF THE GARICOITZ FAMILY TRUST, was a resident of the State of Nevada.

23.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant KELLIE BALLARD BENEFICIARY IRA was an entity formed and operating under the laws of the State of Nevada.

24.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant, KIMBERLY DALE, TRUSTEE OF THE EDWARD W. GIAMBALVO 1988 TRUST, was a resident of the State of Nevada.

25.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant KIMBERLY DALE BENEFICIARY IRA was an entity formed and operating under the laws of the State of Nevada.

26.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant KYLE GIAMBALVO BENEFICIARY IRA was an entity formed and operating under the laws of the State of Nevada.

27.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant NATIONAL INVESTOR SERVICES CORP. CUSTODIAN FBO EDWARD GIAMBALVO IRA was an entity formed and operating under the laws of the State of Nevada.

///

28.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant HEATHER GIMPLE was a resident of the State of Nevada.

29.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JOHN GIMPLE was a resident of the State of Nevada.

30.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JENNIFER GORMLY was a resident of the State of Nevada.

31.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant ARTHUR HARFORD, TRUSTEE OF THE HARFORD FAMILY TRUST, was a resident of the State of Nevada.

32.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant GLORIA HARFORD, TRUSTEE OF THE HARFORD FAMILY TRUST, was a resident of the State of Nevada.

33.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant DIANE HICKS was a resident of the State of Nevada.

34.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JOHN HICKS was a resident of the State of Nevada.

35.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JUDY HOLLOWAY was a resident of the State of Nevada.

36.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant DAVID HUNT was a resident of the State of Nevada.

///

37.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant DAVID HUNT IRA, DAVID HUNT CUSTODIAN, was an entity formed and operating under the laws of the State of Nevada.

38.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant TD AMERITRADE CUSTODIAN FBO DAVID HUNT IRA, was an entity formed and operating under the laws of the State of Nevada.

39.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant RON PETERSON, TRUSTEE OF THE INMAN PETERSON FAMILY TRUST, was a resident of the State of Nevada.

40.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant LANETTE INMAN, TRUSTEE OF THE INMAN PETERSON FAMILY TRUST, was a resident of the State of Nevada.

41.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant DEBBIE KELLEY, TRUSTEE OF THE DEBBIE KELLEY TRUST, was a resident of the State of Nevada.

42.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant PAUL KNIGHT, TRUSTEE OF THE A & P KNIGHT 2007 TRUST, was a resident of the State of Nevada.

43.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant AGNES KNIGHT, TRUSTEE OF THE A & P KNIGHT 2007 TRUST, was a resident of the State of Nevada.

44.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant MARK LEBAR IRA, MARK LEBAR CUSTODIAN, was an entity formed and operating under the laws of the State of California.

///

45. Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant MICHAEL J. LEBAR, BENEFICIARY OF THE W. JUNE LEBAR INHERITED IRA and THE W. JUNE LEBAR SURVIVORS TRUST A, was a resident of the State of California.

46. Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant K. JENELLE RICKSEN, BENEFICIARY OF THE W. JUNE LEBAR SURVIVORS TRUST A and WALLIS J. LEBAR INHERITED IRA, was a resident of the State of California.

47. Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant POLYCOMP CUSTODIAN FBO KATHERINE J. RICKSEN, BENEFICIARY OF WALLIS J. LEBAR INHERITED TRUST, was an entity formed and operating under the laws of the State of Nevada.

48. Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant MARK LIPKOWITZ, TRUSTEE OF THE LIPKOWITZ LIVING TRUST, was a resident of the State of Nevada.

49. Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant URSULA LIPKOWITZ, TRUSTEE OF THE LIPKOWITZ LIVING TRUST, was a resident of the State of Nevada.

50. Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant NORMAN METCALF CUSTODIAN FOR NORMAN METCALF IRA was an entity formed and operating under the laws of the State of Nevada.

51. Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant TD AMERITRADE CUSTODIAN FBO NORMAN METCALF IRA, was an entity formed and operating under the laws of the State of Nevada.

///

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

52.      Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant NORMAN METCALF, TRUSTEE OF THE NORMAN AND BETTY METCALF FAMILY TRUST, was a resident of the State of Nevada.

53.      Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant BETTY METCALF, TRUSTEE OF THE NORMAN AND BETTY METCALF FAMILY TRUST, was a resident of the State of Nevada.

54.      Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant ANGELO PECORILLA was a resident of the State of Nevada.

55.      Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant THOMAS PUGA, TRUSTEE FOR THE PACIFICA ELECTRICAL CONTRACTORS, INC. DEFINED BENEFIT PLAN was an entity formed and operating under the laws of the State of California.

56.      Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant PATRICIA PUMPHREY was a resident of the State of Nevada.

57.      Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant PATRICIA PUMPHREY CUSTODIAN FBO PATRICIA PUMPHREY IRA, was an entity formed and operating under the laws of the State of Nevada.

58.      Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant TD AMERITRADE CUSTODIAN FBO PATRICIA PUMPHREY IRA, was an entity formed and operating under the laws of the State of Nevada.

///

59.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant PATRICIA PUMPHREY, TRUSTEE OF THE PUMPHREY FAMILY TRUST, was a resident of the State of Nevada.

60.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant RAMSDEN PROPERTIES, LTD. was an entity formed and operating under the laws of the State of Nevada.

61.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JANICE PERRY was a resident of the State of Nevada.

62.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JOHN PERRY was a resident of the State of Nevada.

63.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JOHN PERRY CUSTODIAN JOHN PERRY IRA was an entity formed and operating under the laws of the State of Nevada.

64.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant TD AMERITRADE CUSTODIAN FBO JOHN PERRY IRA, was an entity formed and operating under the laws of the State of Nevada.

65.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant RESOLUTE SECURITY GROUP, INC. was an entity formed and operating under the laws of the State of Nevada.

66.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant ROLAND SALA was a resident of the State of Nevada.

67.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant CAROL SALA was a resident of the State of Nevada.

68.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant ROLAND SALA, TRUSTEE OF THE ROLAND AND CAROL SALA FAMILY TRUST, was a resident of the State of Nevada.

69.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant CAROL SALA, TRUSTEE OF THE ROLAND AND CAROL SALA FAMILY TRUST, was a resident of the State of Nevada.

70.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant ROLAND SALA CUSTODIAN ROLAND SALA IRA was an entity formed and operating under the laws of the State of Nevada.

71.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant CAROL SALA CUSTODIAN CAROL SALA IRA was an entity formed and operating under the laws of the State of Nevada.

72.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant CAROL SALA CUSTODIAN CAROL SALA ROLLOVER IRA was an entity formed and operating under the laws of the State of Nevada.

73.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant TD AMERITRADE CUSTODIAN FBO CAROL SALA ROLLOVER IRA was an entity formed and operating under the laws of the State of Nevada.

74.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant MARY SLAVICH was a resident of the State of Nevada.

///

///

75.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant DAVID SMALL, TRUSTEE OF THE SMALL FAMILY TRUST, was a resident of the State of Nevada.

76.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant RUTH SMALL, TRUSTEE OF THE SMALL FAMILY TRUST, was a resident of the State of Nevada.

77.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant FREDRICK SMITH, TRUSTEE OF THE FREDERICK TED AND CAROL DIANE SMITH FAMILY TRUST, was a resident of the State of Nevada.

78.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant CAROL SMITH, TRUSTEE OF THE FREDERICK TED AND CAROL DIANE SMITH FAMILY TRUST, was a resident of the State of Nevada.

79.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant CAROL SMITH CUSTODIAN CAROL SMITH ROLLOVER IRA was an entity formed and operating under the laws of the State of Nevada.

80.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant TD AMERITRADE FBO CAROL SMITH ROLLOVER IRA, was an entity formed and operating under the laws of the State of Nevada.

81.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant CRYSTAL SOUSA was a resident of the State of Texas.

82.    Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant LAUREN METCALF STEVENS was a resident of the State of Nevada.

83.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant WAYNE VAN SICKLE, TRUSTEE OF THE WAYNE VAN SICKLE GRANDCHILDRENS TRUST, was a resident of the State of Nevada.

84.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant WAYNE VAN SICKLE was a resident of the State of Nevada.

85.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant JOAN VAN SICKLE was a resident of the State of Nevada.

86.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant DEBRA WILLIAMS CUSTODIAN DEBRA WILLIAMS SEP IRA was a resident of the State of Nevada.

87.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant TD AMERITRADE CUSTODIAN FBO DEBRA WILLIAMS SEP IRA, was an entity formed and operating under the laws of the State of Nevada.

88.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant DEBRA WILLIAMS, TRUSTEE OF THE DEBRA WILLIAMS FAMILY TRUST, was a resident of the State of Nevada.

89.     Plaintiff is informed and believes and thereon alleges that at all times relevant herein Defendant RICHARD YAMAMOTO, TRUSTEE OF THE YAMAMOTO FAMILY TRUST, was a resident of the State of Nevada.

90.     Plaintiff is informed and believes and thereon alleges that at all times relevant hereto, Defendants were members of one or more of the Wealth Strategies related Investment Entities as described below in ¶ 98.

///

///

**JURISDICTION**

91.    This Court has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157(a) and 1334, and LR 1001 (b)(1) of the Local Rules of Bankruptcy Practice for the United States District Court for the District of Nevada.

92.    This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (H) and is governed procedurally by F.R.Bankr.P. 7001, et seq.

93.    Pursuant to F.R.Bankr.P. 7008 and LR 7008, Plaintiff consents to entry of final orders and judgment by the Court.

94.    Venue in this Court is proper by reason of 28 U.S.C. § 1409.

**FACT ALLEGATIONS**

95.    Plaintiff is informed and believes and thereon alleges that each of the named Defendants in this adversary proceeding received an aggregate of $10,000 or more in distributions, from one or more of the Investment Entities, between January 15, 2012 and January 14, 2016 ("Transfers").  A list of the Defendants and their respective Transfers received, by date paid, is attached as **Exhibit A.**

96.    Plaintiff is informed and believes and thereon alleges that the source of the Transfers to each of the Defendants was monies invested into one or more of the Investment Entities, by approximately 100 investors, between January 1, 2005 and January 13, 2016.

97.    This adversary proceeding arises from a large Ponzi scheme perpetrated though a series of Nevada entities formed by Michael D. Bayliss ("Bayliss"), and Carrie McAninch ("McAninch"), between late 2003 and January 14, 2016.  In November 2003, Bayliss and McAninch formed Wealth Strategies By Bayliss & McAninch, Inc., a Nevada corporation ("WS B&M").
///

98.     Over the course of more than 12 years, Bayliss and McAninch, individually and through WS B&M, utilized various Nevada limited liability companies to solicit more than $50,000,000 in investor monies, from more than 100 investors.  Some or all of the following investment vehicles were used into which Defendants' investment monies were deposited, ostensibly to purchase membership interests:

a.     Wealth Strategies Investment Fund, LLC, a Nevada limited liability company ("WSInvF" or "Investment Entity WSInvF").  Articles of Organization for WSInvF were filed on November 26, 2003.  WS B&M was listed and acted as the Manager of WSInvF;

b.     Wealth Strategies Development, Inc., a Nevada corporation("WSDI"), was formed in January 2004.  Bayliss and McAninch were officers and directors of WSDI;

c.     Connemara Equity Partners, LLC, a Nevada limited liability company ("CEP" or "Investment Entity CEP").  Articles of Organization were filed July 13, 2004.  Connemara Development, LLC, a Nevada limited liability company ("CD"), formed in July 2004, was listed and acted as Manager of CEP.  WSDI was the manager of CD;

d.     Connemara Park, LLC,  a Nevada limited liability company ("CP").  Articles of Organization were filed July 13, 2004.  CD was listed and acted as Manager of CP;

e.     Wealth Strategies Real Estate Fund, LLC, a Nevada limited liability company ("WSREF"or "Investment Entity WSREF").   Articles of Organization were filed October 20, 2004. WS B&M was listed and acted as Manager of WSREF;

f.     Wealth Strategies Equity Fund, LLC, a Nevada limited liability company ("WSEF" or "Investment Entity WSEF").   Articles of Organization were filed February 27, 2009.  WS B&M was listed and

acted as Manager of WSEF;

g.      Wealth Strategies Income Fund, LLC, a Nevada limited liability company ("WSIncF"or "Investment Entity WSIncF").  Articles of Organization were filed April 17, 2009.  WS B&M was listed and acted as Manager of WSIncF;

h.      Nevada Gardnerville Ranch, LLC, a Nevada limited liability company ("NGR" or "Investment Entity NGR").  Articles of Organization were filed September 17, 2010.  Nevada Gardnerville Ranch Manager, LLC, a Nevada limited liability company, was listed and acted as Manager of NGR.  William Fergus was listed and acted as Manager of Nevada Gardnerville Ranch Manager, LLC;

i.      Wealth Strategies Opportunity Fund, LLC, a Nevada limited liability company ("WSOF" or "Investment Entity WSOF"). Articles of Organization were filed September 10, 2012.  WSDI was listed and acted as Manager of WSOF;

j.      Wealth Strategies Opportunity Fund II, LLC, a Nevada limited liability company ("WSOFII" or "Investment Entity WSOFII"). Articles of Organization were filed April 26, 2013.  WDSI was listed and acted as Manager of WSOFII;

k.      Wealth Strategies Real Estate Income Fund, LLC, a Nevada limited liability company ("WSREIncF" or "Investment Entity WSREIncF").  Articles of Organization were filed April 26, 2013. WSDI was listed and acted as Manager of WSREIncF;

l.      JGNM14, LLC, a Nevada limited liability company ("JGNM14" or "Investment Entity JGNM14"). Articles of Organization were filed January 2, 2014.  Natrona Management, LLC, a Nevada limited liability company ("Natrona"), was formed by Bayliss on that same date and Natrona was listed and acted as Manager of JGNM14.

Bayliss was the sole member and manager of Natrona;

  m. HGNM14, LLC, a Nevada limited liability company ("HGNM14" or "Investment Entity HGNM14"). Articles of Organization were filed January 2, 2014. Natrona was listed and acted as Manager of HGNM14;

  n. North Ranch Associates 14, LLC, a Nevada limited liability company ("NRA14" or "Investment Entity NRA14"). Articles of Organization were filed January 6, 2014. Natrona was listed and acted as Manager of NRA14;

  o. FCS14NM, LLC, a Nevada limited liability company ("FCS14NM" or "Investment Entity FCS14NM"). Articles of Organization were filed May 12, 2014. Natrona was listed and acted as Manager of FCS14NM; and

  p. Mustang Ridge, LLC, a Nevada limited liability company ("MR" or "Investment Entity MR"). Articles of Organization were filed September 15, 2015. Natrona was listed and acted as Manager of MR. (collectively "Investment Entities").

  99. Bayliss and McAninch also formed, or owned an interest in, the following entities, each of which was controlled by them directly or indirectly, and some of which purportedly borrowed money from one or more of the Investment Entities. These entities acted as owners and/or developers of real property, or acted as managers of one or more of the other entities:

    Wealth Strategies by Bayliss & McAninch, Inc.
    Wealth Strategies Development, Inc.
    Connemara Dayton, LLC
    Connemara Park, LLC
    Eagle Ridge at Genoa, LLC
    Granite Ridge at Markleeville, LLC
    The Ranch at Gardnerville, LLC
    The Ranch at Gardnerville 1, LLC
    Connemara Development, LLC
    Nevada Gardnerville Ranch Manager, LLC
    Natrona Management, LLC

1  ("Development/Management Entities").

2      100.   Plaintiff is informed and believes and thereon alleges that over the

3  course of 12 years after 2003, more than 100 investors believed they were

4  acquiring membership interests by collectively investing more than

5  $50,000,000 in one or more of the Investment Entities.

6      101.   Plaintiff is informed and believes and thereon alleges that, other

7  than as recipients of Transfers, directly or indirectly, Bayliss and McAninch

8  were on all sides of every transaction described in this adversary proceeding.

9

10 **Wealth Strategies Investment Fund, LLC**

11      102.   Plaintiff is informed and believes and thereon alleges that,

12 utilizing one or more of the Investment Entities, Bayliss and McAninch began

13 offering investment services to existing clients of their accounting firm,

14 Bayliss & Associates, and to other members of the public.

15      103.   As part of the investment process, WSInvF offered prospective

16 investors the opportunity to purchase a membership interest in Investment

17 Entity WSInvF which, in turn, had wide discretion to invest monies into real

18 estate projects in the form of loans, repayment of which were ostensibly

19 secured by deeds of trust recorded against real property.

20      104.   As a further part of the investment process, WSInvF investors

21 were required to sign Subscription Agreements which included various

22 disclosures regarding risk, representations of accreditation and other matters.

23      105.   Some  of the Defendants named in this adversary proceeding

24 executed a Subscription Agreement placing investment monies into Investment

25 Entity WSInvF.  In exchange, each WSInvF investor became a member of

26 WSInvF.

27 ///

28 ///

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

106.   Article 3.8 of the WSInvF Operating Agreement set forth the terms and conditions pursuant to which a membership interest could be redeemed or withdrawn.

107.   Article 4.1(b) of the WSInvF Operating Agreement provided that members could be admitted upon making a minimum $250,000 investment; however, the Manager had the discretion to admit members for investments of lesser amounts.

108.   Article 4.1(e) of the WSInvF Operating Agreement provided that investments would not be interest bearing.

109.   Article 4.1(f) of the WSInvF Operating Agreement provided that members were not entitled to return of any investment prior to the dissolution and winding up of WSInvF.

**Connemara Dayton, LLC**

110.   Connemara Dayton, LLC, a Nevada limited liability company ("Connemara Dayton"), was formed on November 2, 2005. CD was identified as a manager of Connemara Dayton, as was McAninch.

111.   On November 7, 2005, Connemara Dayton took title to a parcel of unimproved real property located on Highway 50 in Dayton, Nevada ("Dayton Property"). The Grant, Bargain, Sale Deed conveying title to Connemara Dayton was recorded in Lyon County on November 7, 2005 as document no. 367385. The Dayton Property is approximately 7.5 acres in size. In 2005, there were no improvements on the Dayton Property.

112.   Connemara Dayton acquired the Dayton Property from Lawrence J. Fry, successor Trustee of the Fry-D Trust dated January 15, 1991, for $1,900,000.

113.   On the same date Connemara Dayton took title to the Dayton Property, it executed a security interest in the form of a deed of trust, in favor

of Investment Entity WSInvF as beneficiary, purportedly to secure repayment of an obligation to it in the amount of $1,885,000 ("WSInvF Connemara Dayton 1st T/D"). McAninch's signature on the executed WSInvF Connemara Dayton 1st T/D was notarized by Bobbi S. May on November 28, 2005. One year later, the WSInvF Connemara Dayton 1st T/D was recorded against the Dayton Property in Lyon County on December 6, 2006, as document no. 396644. Plaintiff is informed and believes and thereon alleges that Investment Entity WSInvF did not utilize a title company or obtain a lender's policy of title insurance on this transaction.

114. Plaintiff is informed and believes and thereon alleges that $1,885,000 was not actually transferred from Investment Entity WSInvF to Connemara Dayton as consideration for the WSInvF Connemara Dayton 1st T/D.

115. On November 7, 2005, Connemara Dayton executed a second security interest in the form of a deed of trust, in favor of Investment Entity WSInvF as beneficiary, purportedly to secure repayment of an obligation in the amount of $3,000,000 ("WSInvF Connemara Dayton 2nd T/D"). The WSInvF Connemara Dayton 2nd T/D was recorded against the Dayton Property in Lyon County on December 29, 2006 as document no. 397945. Plaintiff is informed and believes and thereon alleges that Investment Entity WSInvF did not utilize a title company or obtain a lender's policy of title insurance on this transaction.

116. Plaintiff is informed and believes and thereon alleges that $3,000,000 was not actually transferred from Investment Entity WSInvF to Connemara Dayton as consideration for the "WSInvF Connemara Dayton 2nd T/D.

117. On January 5, 2007, Bayliss and McAninch, each in their capacity as manager of Investment Entity WSInvF, executed an Assignment of Promissory Note and Deed of Trust purporting to transfer the WSInvF

Connemara Dayton 1st T/D and corresponding note in the amount of $1,885,000 to U.S. Bank "For value received" ("Dayton U.S. Bank Assignment"). The Dayton U.S. Bank Assignment was recorded in Lyon County on June 21, 2007 as document no. 408730.

118.    On or about February 13, 2008, Connemara Dayton borrowed $750,000 from Western Highland Mortgage Fund 1, LLC ("Western Highland"). As security for repayment of the loan from Western Highland, on February 14, 2008 Connemara Dayton granted and executed a deed of trust in favor of Western Highland as beneficiary, recorded in Lyon County as document no. 4209915 ("Western Highland D/T"). In 2008, there were no improvements on the Dayton Property.

119.    On that same date, on behalf of Connemara Dayton, McAninch executed two Subordination Agreements. The first Subordination Agreement, purporting to subordinate the WSInvF Connemara Dayton 1st T/D to the Western Highland D/T, was recorded in Lyon County as document no. 420916. As of June 21, 2007, Investment Entity WSInvF had previously assigned its interest in the WSInvF Connemara Dayton 1st T/D to U.S. Bank and had no legal ability to subordinate that position.

120.    On February 14, 2008, McAninch executed a second Subordination Agreement subordinating the WSInvF Connemara Dayton 2nd T/D to the Western Highland D/T. The second Subordination Agreement was recorded in Lyon County as document no. 420917.

**Wealth Strategies Opportunity Fund, LLC**

121.    Plaintiff is informed and believes and thereon alleges that after the formation of Investment Entity WSOF, Bayliss and McAninch and/or WS B&M continued offering investment opportunities to existing clients of their accounting firm, Bayliss & Associates, and to members of the public.

122.   As part of the investment process, prospective investors were offered the opportunity to purchase a membership interest in Investment Fund WSOF which, in turn, had wide discretion to invest monies into real estate projects in the form of loans, repayment of which were ostensibly secured by deeds of trust against real property.

123.   As a further part of the investment process, Investment Entity WSOF investors were required to sign Subscription Agreements which included various disclosures regarding risk, representations of accreditations and other matters.

124.   Some or all of the Defendants named in this adversary proceeding executed a Subscription Agreement placing investment monies into Investment Entity WSOF.  In exchange, each WSOF investor became a member of Investment Entity WSOF.

125.   Article 3.8 of  the WSOF Operating Agreement set forth the terms and conditions pursuant to which a membership interest could be redeemed or withdrawn.

126.   Article 4.1(b) of the WSOF Operating Agreement provided that members could be admitted upon making a minimum $250,000 investment; however, the Manager had the discretion to admit members for investments of lesser amounts.

127.   Article 4.1(d) of the WSOF Operating Agreement provided that investments would not be interest bearing.

128.   Article 4.1(e) of the WSOF Operating Agreement provided that members were not entitled to return of any investment prior to dissolution and winding up of WSOF.

129.   On January 1, 2013, Bayliss, as a manager of Connemara Dayton, executed a Deed of Trust granting a security interest in the Dayton Property in favor of Investment Entity WSOF, as beneficiary, purportedly to secure

repayment of an obligation of $2,100,000 ("WSOF Connemara Dayton  D/T"). The WSOF Connemara Dayton D/T was recorded against the Dayton Property in Lyon County on March 6, 2013 as document no. 503792.    Plaintiff is informed and believes and thereon alleges that Investment Entity WSOF did not utilize a title company or obtain a lender's policy of title insurance on this transaction.

130.    Plaintiff is informed and believes and thereon alleges that $2,100,000 was not actually transferred from Investment Entity WSOF to Connemara Dayton as consideration in exchange for the WSOF Connemara Dayton D/T.

131.    On March 6, 2013, McAninch, in her capacity as manager of Investment Entity WSInvF, executed a Subordination Agreement, purporting to subordinate the WSInvF Connemara Dayton 2nd  D/T to the WSOF Connemara Dayton  D/T.  The March 6, 2013  Subordination Agreement was recorded in Lyon County on March 6, 2013 as document no. 503793.

132.    As of March 6, 2013 the Dayton Property was encumbered by deeds of trust purporting to secure repayment of obligations totaling $7,735,000.  In 2013, there were no improvements on the Dayton Property.

133.    As of January 14, 2016, there were no improvements on the Dayton Property.

**GraniteRidge at Markleeville, LLC**

134.    GraniteRidge at Markleeville, LLC, a Nevada limited liability company ("GraniteRidge"), was formed on October 21, 2005.  GraniteRidge was registered as a foreign entity in California on December 23, 2005. WSDI was a member and Manager of GraniteRidge as was Eagle Ridge Painter, Inc., a Nevada corporation formed in January 20, 2004 ("ERP"). ///

135.   GraniteRidge acquired fee title to unimproved real property in Markleeville, Alpine County, California on October 27, 2005.  The real property consisted of two adjacent parcels of land comprising approximately 152.58 acres ("GraniteRidge Property").

136.   The GraniteRidge  Property was encumbered by two deeds of trust.  In December 2005, GraniteRidge granted a security interest in the form of a deed of trust to Investment Entity WSInvF ("WSInvF GraniteRidge D/T"), purportedly to secure  repayment of an obligation in the original amount of $1,002,080.  The WSInvF GraniteRidge  D/T was recorded in Alpine County on December 12, 2005, in book 95, page 5067 as document no. 2006-1134.  Plaintiff is informed and believes and thereon alleges that Investment Entity WSInvF did not utilize a title company or obtain a lender's policy of title insurance on this transaction.

137.   Plaintiff is informed and believes and thereon alleges that $1,002,080 was not actually transferred from Investment Entity WSInvF to GraniteRidge as consideration for the "WSInvF GraniteRidge  D/T.

138.   One year later, on December 28, 2006, GraniteRidge granted a security interest in the form of a deed of trust to Investment Entity WSInvF ("WSInvF GraniteRidge 2nd D/T"), to secure  repayment of an obligation in the original amount of $5,000,000.  The WSInvF GraniteRidge 2nd D/T was recorded in Alpine County on December 28, 2006, at book 95, page 5257 as document no. 2006-1199.  Plaintiff is informed and believes and thereon alleges that Investment Entity WSInvF did not utilize a title company or obtain a lender's policy of title insurance on this transaction.

139.   Plaintiff is informed and believes and thereon alleges that $5,000,000 was not actually transferred from Investment Entity WSInvF to GraniteRidge as consideration in exchange for the WSInvF GraniteRidge 2nd D/T.

140.   On or about July 3, 2007, Investment Entity WSInvF assigned the beneficial interest in the WSInvF GraniteRidge D/T and the corresponding promissory note to U.S. Bank.  The assignment to U.S. Bank was recorded in Alpine County at book 96, page 2817, as document no. 2007-695.  The result of this transaction was that the WSInvF GraniteRidge 2nd D/T purportedly securing repayment of $5 million to Investment Entity WSInvF, became subordinate to U.S. Bank, a non-related entity.

141.   Prior to January 1, 2015, the equity membership interest in GraniteRidge was owned by ERP, as to an undivided 1/3 interest and by WSDI as to an undivided 2/3 interest.

142.   On January 1, 2015, ERP as Seller, and WSDI as Buyer, entered into an Assignment and Assumption Agreement pursuant to which WSDI acquired ERP's 1/3 equity membership interest in GraniteRidge.

143.   As of the Petition Date, there were no improvements on the GraniteRidge Property.

**Eagle Ridge at Genoa, LLC**

144.   ERP's president and secretary/treasurer were Greg Painter and Hollis Painter, respectively.

145.   Eagle Ridge At Genoa, LLC ("Eagle Ridge"), was a Nevada limited liability company formed on January 23, 2004.  ERP was named as, and acted as, manager of Eagle Ridge.

146.   Plaintiff is informed and believes and thereon alleges that in February 2004, Eagle Ridge acquired certain real property in Douglas County, Nevada.  The real property was to be developed as a residential subdivision of approximately 24 individual building lots in the foothills of Genoa overlooking the Carson Valley ("Eagle Ridge Property").

///

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

147.   Plaintiff is informed and believes and thereon alleges that at some time after January 2005, WSDI acquired a 40% equity interest in ERP.

148.   In June 2005, Eagle Ridge granted a security interest in the form of a construction deed of trust on the Eagle Ridge Property, in favor of Irwin Union Bank and Trust Company ("Irwin Union"), to secure repayment of a promissory note in an amount not to exceed $21,000,000 ("Irwin Union D/T"). The Irwin Union D/T was recorded in Douglas County on June 20, 2005 as document no. 647252.

149.   The beneficial interest of the Irwin Union D/T was assigned to West RADC Venture 2010-2, LLC on April 18, 2011 by two separate documents, one recorded April 18, 2011 as document no. 781718 and on November 29, 2011 as document no. 793272.

150.   On May 24, 2011, Eagle Ridge granted a security interest in the form of a deed of trust in favor of Investment Entity WSInvF purportedly to secure repayment of a $10,000,000 obligation ("WSInvF Eagle Ridge D/T"). The WSInvF Eagle Ridge D/T was recorded in Douglas County on May 24, 2011 as document no. 783697.   Plaintiff is informed and believes and thereon alleges that Investment Entity WSInvF did not utilize a title company or obtain a lender's policy of title insurance on this transaction.

151.   Plaintiff is informed and believes and thereon alleges that $10,000,000 was not actually transferred from Investment Entity WSInvF to Eagle Ridge as consideration in exchange for the WSInvF Eagle Ridge D/T.

**Connemara Park, LLC**

152.   Connemara Park, LLC, a Nevada limited liability company ("Connemara Park"), was formed on July 13, 2004.  Connemara Development was the manager of Connemara Park.

///

153.   On November 8, 2005, Connemara Park, as a co-owner, acquired an unimproved parcel of land located at 1842 East College Parkway in Carson City, Nevada, also described as APN 008-921-07 [previously APN 2-653-14] ("Carson City Property").  By Corporation Grant, Bargain, Sale Deed recorded November 8, 2005 as document no. 3456823, Connemara Park took title, as a co-owner, to an undivided 89% tenancy-in-common interest and Bill Burger, Trustee of the Burger Family Trust dated March 25, 1998 ("Burger Family Trust"), took title, as co-owner, to an undivided 11% tenancy-in-common interest.

154.   On October 14, 2005, the Burger Family Trust executed a promissory note in favor of Connemara Park in the amount of $70,000 ("Burger Family Note").  On October 4, 2005, a security interest in the form of a deed of trust was granted by Bill Burger, in his capacity as Trustee of the Burger Family Trust, to secure repayment of a $70,000 obligation to Connemara Park ("Connemara Park D/T").  The Connemara Park D/T was recorded in Carson City as document no. 345684 on November 8, 2005.  The Connemara Park D/T purports to encumber an 11% interest in the Carson City Property.  Plaintiff is informed and believes and thereon alleges that Investment Entity CP did not utilize a title company or obtain a lender's policy of title insurance on this transaction.

155.   In February 2007, Connemara Park granted a security interest in the form of a deed of trust to Investment Entity WSInvF purportedly to secure repayment of an obligation of $1,500,000 ("WSInvF Carson City D/T").  The WSInvF Carson City D/T was recorded in Carson City on February 12, 2007 as document no. 364425.  This WSInvF Carson City D/T also encumbered APN 008-921-09.  Plaintiff is informed and believes and thereon alleges that Investment Entity WSInvF did not obtain a lender's policy of title insurance on this transaction.

156.   Plaintiff is informed and believes and thereon alleges that WSInvF did not transfer $1,500,000 to Connemara Park in exchange for the WSInvF Carson City D/T.

157.   On February 9, 2009, a Partial Reconveyance was recorded in Carson City County pursuant to which Investment Entity WSInvF purportedly reconveyed its security interest in APN 008-921-09.  The Partial Reconveyance was recorded as document no. 386402.

158.   In September 2012, a security interest in the form of a deed of trust was granted by Connemara Park to secure repayment of a $240,000 obligation to Investment Entity WSInvF ("WSInvF Carson City 2nd  D/T"). The WSInvF Carson City 2nd D/T was recorded in Carson City on December 5, 2013 as document no. 440712.  Plaintiff is informed and believes and thereon alleges that Investment Entity WSInvF did not obtain a lender's policy of title insurance on this transaction.

159.   Plaintiff is informed and believes and thereon alleges that WSInvF did not transfer $1,500,000 to Connemara Park in exchange for the WSInvF Carson City 2nd  D/T.

160.   As of September 2012, there were no improvements on the Carson City Property.

161.   On February 20, 2014, Investment Entity WSInvF recorded a Substitution of Trustee changing the Trustee on the WSInvF D/T from Stewart Title to Northern Nevada Title.  The Substitution of Trustee was recorded as document no. 442471.


**The Ranch At Gardnerville, LLC**

162.   On June 16, 2006, WS B&M and WSDI formed The Ranch at Gardnerville, LLC, a Nevada limited liability company ("TRG").  Both WSB&M and WSDI were listed as a managers of TRG.

163.   On June 29, 2007, WS B&M and WSDI formed The Ranch at Gardnerville 1, LLC, a Nevada limited liability company ("TRG 1").  Both WS B&M and WSDI were listed as a managers of TRG.

**TRG Land Acquisition**

164.   In July 2006, TRG acquired land ("Park Cattle Parcel"), in Douglas County from Park Cattle Company ("Park Cattle"), for $28,880,000. The Grant Bargain and Sale Deed was recorded in Douglas County on July 7, 2006 as document no. 679108.

165.   On July 7, 2006, TRG also acquired an additional parcel ("Anker Parcel") from Alton and Susan Anker ("Anker"), for $11,120,000.  The Grant Bargain and Sale Deed was recorded in Douglas County on July 7, 2006 as document no. 679109.

166.   The Park Cattle Parcel and the Anker Parcel are collectively referred to as the TRG Parcels.

167.   On July 7, 2006, TRG granted a security interest in the form of a deed of trust to Anker, as beneficiaries to secure repayment of an obligation in the amount of $9,730,000 ("Anker D/T").  The Anker D/T was recorded in Douglas County on July 7, 2006 as document no. 679111.

168.   Plaintiff is informed and believes and thereon alleges that on or about December 29, 2006, Investment Entity WSInvF recorded a deed of trust on the TRG Parcels purportedly for the purpose of securing repayment of an obligation in the amount of $15,000,000.  Plaintiff is further informed and believes and thereon alleges that on July 15, 2015, the $15,000,000 deed of trust was reconveyed.

169.   On August 6, 2014, TRG granted a security interest in the form of a deed of trust to WSInvF to secure repayment of an obligation in the amount of $10,000,000 ("WSInvF  Ranch at Gardnerville 2nd D/T").  The WSInvF

Ranch at Gardnerville 2nd D/T, executed by McAninch as President of WSDI, manager of TRG, was recorded in Douglas County on August 6, 2014 as document no. 847524.  The WSInvF Ranch at Gardnerville 2nd D/T was recorded by Northern Nevada Title of Carson City as an "Accommodation Only".  Investment Entity WSInvF did not obtain a lender's policy of title insurance on this transaction.

170.   Five days later, on August 11, 2014, TRG recorded a 'correction' Deed of Trust in favor of WSInvF for the purpose of correcting the amount of the WSInvF Ranch at Gardnerville 2nd D/T to reflect that it was to secure repayment of an obligation in the amount of $40,000,000.  This 'correction' deed of trust was recorded in Douglas County on August 11, 2014 as document no. 847727.  As with document no. 847524, the correction deed of trust was recorded by Northern Nevada Title of Carson City as an "Accommodation Only".

**TRG 1 Land Acquisition**

171.   On July 6, 2007, TRG conveyed a portion of its Park Cattle Parcel to TRG 1.

172.   Plaintiff is informed and believes an thereon alleges that between November 2011 and April 2014, TRG 1 sold portions of its TRG Parcels to various homebuilders and obtained partial releases and reconveyances of deeds of trust in order to accomplish those sales. The result was that, after April 2014, TRG 1 owned approximately 31.4 acres of land zoned for residential use.

173.   Plaintiff is informed and believes and thereon alleges that after the formation of NGR in September 2010,  Bayliss, McAninch and William Fergus began offering investment opportunities to existing clients of Bayliss & Associates, and to other members of the public.

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

32

174.   As part of the investment process, NGR offered prospective investors the opportunity to purchase a membership interest in NGR which, in turn, had wide discretion to invest monies into real estate projects in the form of loans repayment of which were ostensibly secured by deeds of trust against real property.

175.   As a further part of the investment process, NGR investors were required to sign Subscription Agreements which included various disclosures regarding risk, representations of accreditations and other matters.

176.   Some or all of the Defendants named in this adversary proceeding executed a Subscription Agreement placing investment monies into Investment Entity NGR.  In exchange, each NGR investor became a member of Investment Entity NGR.

177.   On or about August 1, 2012, TRG 1 granted a security interest in the form of a deed of trust to Investment Entity NGR to secure repayment of an obligation of $7,300,000 ("NGR TRG 1 D/T").  The NGR TRG 1D/T was not recorded in Douglas County until March 19, 2013 as document 820256.

178.   On or about September 6, 2013, TRG 1 granted a security interest in the form of a deed of trust to Ruby Capital Investment, LLC as security for repayment of $3,500,000 ("Ruby 1st D/T").  The Ruby 1st D/T was recorded September 6, 2013 in Douglas County as document no. 830122.

179.   On that same date, TRG 1 entered into a Subordination Agreement with NGR in which Investment Entity NGR agreed to subordinate the NGR TRG 1 D/T to the Ruby 1st T/D.  The Subordination Agreement was recorded in Douglas County on September 6, 2013 as document no. 830123.

180.   On July 6, 2013, TRG 1 granted a security interest in the form of a deed of trust to Investment Entity WSInvF to secure repayment of an obligation of $10,000,000 ("WSInvF TRG 1 D/T").  The WSInvF TRG 1 D/T

///

was not recorded in Douglas County until November 25, 2013 as document no. 834549.

181.   On May 29, 2014, TRG 1 granted a security interest in the form of a deed of trust to Opal Investments, LLC, The Ben NV Trust and Allure Pebble, LLC ("Opal Beneficiaries D/T") to secure repayment of an obligation of $6,000,000.  The Opal Beneficiaries D/T was recorded in Douglas County on June 3, 2014 as document no. 843860.

182.   On August 6, 2014, TRG 1 granted a security interest in the form of a deed of trust to secure repayment of $10,000,000 to Investment Entity WSInvF ("Second WSInvF D/T").  The Second WSInvF D/T was recorded in Douglas County on August 6, 2014 as document no. 847523.

183.   Five days later, on August 11, 2014, TRG re-recorded the Second WSInvF D/T to change the amount secured from $10,000,000 to $40,000,000. The re-recording document was recorded in Douglas County on August 11, 2014 as document no. 847727.

**La Paloma Trust**

184.   Prior to January 1, 2012, the La Paloma Nevada 2006 Trust ("La Paloma Trust"), and WS B&M had a debtor creditor relationship.  As of December 31, 2011, WS B&M owed the La Paloma Trust $11,178.50.

185.   On January 1, 2012, WS B&M, as Lessee, entered into a formal Commercial Lease for the premises located at 1830 E. College Parkway in Carson City ("Lease").  The Lessor was the La Paloma Trust.   The base monthly payment under the Lease was $11,191.

186.   The Lease created another debtor-creditor relationship between the La Paloma Trust and WS B&M.

187.   On January 5, 2012, La Paloma Trust was owed $5,589 and on February 1, 2012, LaPaloma Trust was owed $11,178.

188.   On January 19, 2016, WS B&M filed its Schedules of Assets and Liabilities, WS B&M listed the La Paloma Trust as an unsecured creditor in the amount of $83,549.  On July 18, 2016 the La Paloma Trust filed an unsecured claim, claim 26-1, in the WS B&M case.

**Cotton, Driggs, Walch, Kearney & Holley**

189.   As of June 14, 2011, if not earlier, the law firm of Cotton, Driggs, Walch, Kearney & Holley ("Cotton Driggs"), was providing legal representation for, but not limited to, WS B&M, WSInvF, WSDI and WSRE.

190.   As of January 5, 2012, Cotton Driggs was owed $11,052.  On or about January 30, 2012, Cotton Driggs was owed $10,304.

191.   On June 6, 2016,  Driggs, Walch, Fine, Wray, Puzey & Thompson, as the successor-in-interest to Cotton Driggs ("Driggs Walch"), filed proof of claim 6-1 in the WS B&M case.  The Driggs Walch claim is for $616,469.

**Carole Terry**

192.   In or about July 2007, Carole Terry's Living Trust invested $800,000 into WSInvF and her IRA invested $345,050 into WSRE.

193.   In October 2014, Carole Terry ("Terry"), filed her Complaint in the Second Judicial District Court, Washoe County, case no. CV14-02228 against WS B&M, Bayliss and McAninch, asserting claims for breach of fiduciary duty, fraudulent misrepresentation, negligent misrepresentation, breach of contract unjust enrichment quantum merit and conversion ("Terry Claims").  In August 2015, Bayliss, individually and in his capacities as president of WS B&M, and manager of WSInvF and WSRE, respectively, executed a Confession of Judgment in favor of Terry in the amount of $1,453,796.

194.   On April 27, 2016, Terry filed proof of claim, 13-1, in the WSInvF case in the amount of $1,453,796.  On that same date, Terry filed proof of claim 1-1 in the WS B&M case for the same amount.  On that same date, Terry filed proof of claim 10-1 in the WSRE case for the same amount.

**The Fraudulent 'Ponzi' Scheme**

195.   As direct or indirect managing members of Investment Entities WSInvF, WSOF and NRG, Bayliss and McAninch made and controlled all decisions concerning the Investment Entities and the Development/Management Entities.

196.   As direct or indirect managing members of Investment Entities WSInvF, WSOF and NRG, Bayliss and McAninch exercised exclusive control over the bank accounts of each of  the Investment Entities and each of the Development/Management Entities.

197.   Defendants, and each of them, knew or should have known that one or more of the Investment Entities did not have sufficient income from the regular operation of the respective businesses to justify the Transfers to Defendants.

198.   Defendants, and each of them, accepted such Transfers with the knowledge that the Investment Entities did not have sufficient income from the regular operation of the respective businesses to make such Transfers.

199.   Between December 2003 and the Petition Date, neither The Ranch At Gardnerville nor The Ranch At Gardnerville 1 generated any income which would have permitted either one of those entities to make interest or debt service payments on the subordinate obligations to Investment Entity WSInvF, repayment of which was ostensibly secured by the respective deeds of trust.

200.   Between December 2003 and the Petition Date, the Dayton Property did not generate any income which would have permitted it to make

interest or debt service payments on the subordinate obligations to Investment Entities WSInvF or WSOF repayment of which was ostensibly secured by the respective deeds of trust.

201.   Between December 2003 and the Petition Date, the Eagle Ridge Property did not generate any income which would have permitted it to make interest or debt service payments on the subordinate obligation to Investment Entity WSInvF, repayment of which was ostensibly secured by the deed of trust.

202.   Between December 2003 and the Petition Date, the GraniteRidge Property did not generate any income which would have permitted it to make interest or debt service payments on the subordinate obligations to Investment Entity WSInvF, repayment of which was ostensibly secured by the respective deeds of trust.

203.   Between December 2003 and the Petition Date, the Carson City Property did not generate any income which would have permitted it to make interest or debt service payments on the subordinate obligations to Investment Entity WSInvF, repayment of which was ostensibly secured by the respective deeds of trust.

204.   Plaintiff is informed and believes and thereon alleges that at the time of making the Transfers to Defendants, both Bayliss and McAninch knew that the Investment Entities had insufficient assets or income from the operation of the Development/Management Entities to make such Transfers.

205.   The Investment Entities through their direct or indirect Managers, Bayliss and McAninch, utilized investment monies from later investors to make the Transfers to earlier investors as set forth in **Exhibit A** to appease the investors in order to prolong the duration of the fraudulent scheme.

///

///

### FIRST CLAIM FOR RELIEF

### Actual Fraudulent Transfer 11 U.S.C. § 548(a)(1)(A)

206.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 205 above and incorporates them herein as if they were set forth in their entirety.

207.   Section 548 (a)(1)(A) provides that a trustee may avoid any transfer of an interest of the debtor in property within 2 years before the filing of the petition if the debtor made the transfer with the actual intent to hinder, delay or defraud any entity to which the debtor was or became indebted, on or after the date that such transfer was made or such obligation was incurred.

208.   The Transfers were made to Defendants during the time when Bayliss and McAninch, through the instrumentalities of the various Wealth Strategies Entities, were conducting an elaborate Ponzi scheme with the actual intent to hinder, delay and defraud creditors of the various Wealth Strategies Entities.

209.   Evidence of the Wealth Strategies Entities' intention to hinder, delay and defraud their creditors includes, but is not limited to the following:

a.  Defendants were investors in one or more of the Investment Entities;

b.  At or about the time of the Transfers, only Investment Entities WSInvF, WSOF and NGR held purportedly secured positions on real property owned by Connemara Dayton, Connemara Park, GraniteRidge at Markleeville, Eagle Ridge at Genoa, The Ranch at Gardnerville and The Ranch at Gardnerville 1;

c.  At no time during the period 2012 through the Petition Date did Connemara Dayton, Connemara Park, Eagle Ridge or GraniteRidge at Markleeville conduct any business activity which would have generated income with which those entities would have been able to make payments of

1 debt service or interest on the obligations owed to Investment Entity WSInvF

2 or Investment Entity WSOF;

3          d.  At no time during the period 2012 through the Petition Date

4 did The Ranch at Gardnerville or The Ranch at Gardnerville 1 conduct any

5 business activity which would have generated income with which they would

6 have been able to make payments of debt service or interest over and above

7 any payments to senior, third-party debt, on the obligations owed to Investment

8 Entity WSInvF or Investment Entity NGR;

9          e.  The only source of monies available to the Investment Entities

10 to make the Transfers to Defendants was in the form of monies invested by

11 other investors into one or more of the Investment Entities, and

12          f.  Monies were transferred from one Investment Entity to another

13 Investment Entity on a random, *ad hoc* basis and used to make the Transfers.

14

## SECOND CLAIM FOR RELIEF

**Actual Fraudulent Transfer 11 U.S.C. § 544(b) and
NRS §§112.180.1(a) and 112.210**

18    210.   Plaintiff repeats and realleges each and every allegation contained

19 in paragraphs 1 through 209 above and incorporates them herein as if they were

20 set forth in their entirety.

21    211.   At all times relevant to the Transfers, there have been, and are, one

22 or more creditors who have held, and still hold, mature or unmatured unsecured

23 claims against the substantively consolidated entities that were and are

24 allowable under § 502 or that were and are not allowable only under § 502(e).

25 The unsecured claims include but are not limited to those held by the La Paloma

26 Trust, Driggs Walch and Terry described in ¶¶ 184 through 194.

27    212.   Section 544(b) provides that a trustee may avoid any transfer of an

28 interest of the debtor in property or any obligation incurred by the debtor that is

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

voidable under applicable law by a creditor holding an allowed unsecured claim that is allowable under section 502.

213.   The Transfers were made to Defendants during the time when Bayliss and McAninch, through the instrumentalities of the various Wealth Strategies Entities, were conducting an elaborate Ponzi scheme with the actual intent to hinder, delay and defraud creditors of the various Wealth Strategies Entities.

214.   Evidence of the Wealth Strategies Entities' intention to hinder, delay and defraud their creditors includes, but is not limited to the following:

a.  Defendants were investors in one or more of the Investment Entities;

b.  At or about the time of the Transfers, only Investment Entity WSInvF, Investment Entity WSOF and Investment Entity NGR held purportedly secured positions on real property owned by Connemara Dayton, Connemara Park, GraniteRidge at Markleeville, Eagle Ridge at Genoa, The Ranch at Gardnerville and The Ranch at Gardnerville 1;

c.  At no time during the period 2012 through the Petition Date did Connemara Dayton, Connemara Park, Eagle Ridge or GraniteRidge at Markleeville conduct any business activity which would have generated income with which they would have been able to make payments of  debt service or interest on the obligations owed to Investment Entity WSInvF or Investment Entity WSOF.

d.  At no time during the period 2012 through the Petition Date did The Ranch at Gardnerville or The Ranch at Gardnerville 1 conduct any business activity which would have generated income with which they would have been able to make payments of  debt service or interest over and above any payments to senior, third party debt, on the obligations owed to WSInvF and Investment Entity NGR;

e.  The only source of monies available to any of the Investment Entities to make the Transfers to Defendants was in the form of monies invested by other investors into one or more of the Investment Entities;

f.  Monies were commingled and transferred from one Investment Entity to another Investment Entity on a random, *ad hoc* basis and used to make the Transfers.

### THIRD CLAIM FOR RELIEF

**Constructive Fraudulent Transfer**
**11 U.S.C. §§ 548(a)(1)(B)**

215.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 214 and incorporates them herein as if they were set forth in their entirety.

216.   The Transfers were made on or within two years before the Petition Date.

217.   At all times material hereto, the Investment Entities: (a) were insolvent on the dates the Transfers were made or became insolvent as a result of the Transfers, and/or (b) were engaged in businesses or transactions, or were about to engage in businesses or transactions, for which the property remaining with the Investment Entities after the Transfers were effectuated constituted unreasonably small capital, and/or (c) at the time of the Transfers, intended to incur, or believed that they would incur, debts that were beyond their ability to pay as their debts matured.

218.   The Investment Entities received no value, or less than a reasonably equivalent value, in exchange for the Transfers.

219.   To the extent that Defendants are not initial transferees of the Transfers, they are immediate or mediate transferees of the initial transferee of the Transfers, and upon information and belief cannot satisfy their burden that

they took the transfers for value and in good faith, and without knowledge of the voidability of the Transfers, nor are the entities or individuals for whose benefit such Transfers were made.

### FOURTH CLAIM FOR RELIEF

**Constructive Fraud**
**11 U.S.C. §§ 544(b) and NRS 112.180**

220.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 219 and incorporates them herein as if they were set forth in their entirety.

221.   At all times relevant, the La Paloma Trust, Driggs Walch and Terry held, and continue to hold, unsecured claims against the Wealth Strategies Entities that were and are allowable under 11 U.S.C. § 502, or that were and are not allowable only under 11 U.S.C. § 502(e).  The Transfers are avoidable under applicable non-bankruptcy law by a creditor holding an unsecured claim in the Wealth Strategies cases.

222.   The Investment Entities made the Transfers without receiving any value, or a reasonably equivalent value, in exchange for the Transfers.

223.   At all times material hereto, the Investment Entities were engaged in a business or transaction, or were about to engage in a business or transaction, for which the remaining assets of the Investment Entities were unreasonably small in relation to the contemplated business or transaction.

224.   The Investment Entities intended to incur, or believed or reasonably should have believed that the Investment Entities would incur, debts beyond their ability to pay as they became due.

225.   The Investment Entities were insolvent at the time of the Transfers, or became insolvent as a result of the Transfers.  The Investment Entities were insolvent, or became insolvent, because (1) the sum of their obligations

exceeded their assets at a fair valuation, and (2) they were unable to pay their obligations as they became due.

226.    To the extent that Defendants are not initial transferees of the Transfers, they are subsequent transferees of the initial transferees of the Transfers, and upon information and belief, cannot satisfy their burden that they took the Transfers for value and in good faith, nor are the entities or individuals for whose benefit such Transfers were made.

## FIFTH CLAIM FOR RELIEF

### 11 U.S.C. § 550

227.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 226 above and incorporates them herein as if they were set forth in their entirety.

228.    Plaintiff is entitled to avoid the Transfers pursuant to §§ 544, incorporating NRS 112.010 et seq., and 548.

229.    Pursuant to § 550(a)(1), Plaintiff may recover the Transfers from the respective Defendants as the initial transferees or any entity on whose behalf the Transfers were made.

230.    Pursuant to § 550(a)(2), Plaintiff may recover the Transfers from any immediate transferees of the initial Defendant transferee plus interest thereon to the date of payment and the costs of this action.

## SIXTH CLAIM FOR RELIEF

### Unjust Enrichment

231.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 230 above and incorporates them herein as if they were set forth in their entirety.

///

Hartman & Hartman
510 West Plumb Lane, Ste. B
Reno, Nevada 89509
(775) 324-2800

43

232.   Defendants, and each of them, have obtained a benefit from another by fraud, duress or the taking of undue advantage of hundreds of other investors in the Investment  Entities.

233.   The losses Defendants have avoided by investing in the fraudulent scheme have come at the expense of dozens of other investors in the Investment Entities.

234.   The Investment Entities received less than a reasonably equivalent value in exchange for the Transfers to Defendants.

235.   The Investment Entities conferred a benefit upon Defendants by making the Transfers.

236.   The Transfers were made by the Investment Entities with actual intent to defraud creditors and investors of the Investment Entities.

237.   Because Defendants failed to provide the Investment Entities with reasonably equivalent value for the Transfers, Defendants have been unjustly enriched by the Transfers from the Investment Entities.

238.   Under the circumstances, it would be inequitable for Defendants to retain the benefit conferred by the Investment Entities without providing reasonably equivalent value.

### SEVENTH CLAIM FOR RELIEF

**Objection To / Disallowance of All Claims**
**11 U.S.C. § 502(a) and (d)**

239.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 238 above and incorporates them herein as if they were set forth in their entirety.

240.   Each of the Defendants is an individual or entity from which property is recoverable under § 550.

///

241.  Defendants are transferees of the Transfers avoidable under §§ 548 and/or NRS 112.010 et sq.

242.  Defendants have not paid the amount of the Transfers, or turned over such property, for which Defendants are liable under § 550.

243.  Some or all of the Defendants have filed proofs of claim in these substantively consolidated cases.  As each of the Defendants made investments into one or more of the Investment Entities, their proofs of claim are subject to objection and this adversary proceeding is an objection to such proofs of claim.

244.  In addition, to the extent that any Defendant were to successfully establish entitlement to a claim rather than an interest, pursuant to § 502(d), any and all claims of Defendants and/or their assignees against the Debtors' substantively consolidated chapter 7 estate must be disallowed until such time as each of the Defendants pay to the chapter 7 estate an amount equal to the aggregate amount of the Transfers received, plus interest thereon and costs.

**WHEREFORE**, Plaintiff prays for relief against Defendants, and each of them, as follows:

A.  On the First Claim For Relief, for Order and Judgment finding and concluding that the Transfers which occurred after January 13, 2014 are avoided under § 548(a)(1)(A);

B.  On the Second Claim For Relief, for Order and Judgment finding and concluding that the Transfers which occurred between January 14, 2012 and January 13, 2014 are avoided under § 544(b) and NRS 112.010, et sq.;

C.  On the Third Claim For Relief, for Order and Judgment:  (a) avoiding and preserving the Transfers which occurred between January 15, 2012 and January 13, 2016 free and clear from any claimed interest of Defendants, (b) directing that the Transfers be set aside, (c) recovering such Transfers or the value thereof from Defendants for the benefit of the Wealth

Strategies Entities' substantively consolidated estates, and (d) recovering pre-judgment and post-judgment interest and costs from Defendants;

D.     On the Fifth Claim For Relief, for Order and Judgment: (a) avoiding and preserving the Transfers which occurred between January 15, 2012 and January 13, 2016 free and clear from any claimed interest of Defendants, (b) directing that the Transfers be set aside, (c) recovering such Transfers or the value thereof from Defendants for the benefit of the Wealth Strategies Entities' substantively consolidated estates, and (d) recovering pre-judgment and post-judgment interest and costs from Defendants;

E.     On the Sixth Claim For Relief, for Order and Judgment finding and concluding that  each the Defendants were unjustly enriched to the full extent of the Transfers;

F.     On the Seventh Claim For Relief, Order and Judgment disallowing every proof of claim or proof of interest filed by Defendants, as necessary, unless and until each Defendant has paid to Plaintiff the amount of their respective Transfers, and

G.     For such other and further relief as is just in the premises.

DATED: January 11, 2018.

**HARTMAN & HARTMAN**

/S/ Jeffrey L. Hartman
Jeffrey L. Hartman, Esq.
Attorney for Plaintiff,
W. Donald Gieseke